GOODMAN MFG. CO. v. PITTSBURG–BUFFALO CO.

(District Court, W. D. Pennsylvania.  April 3, 1915.)

No. 10.

RECEIVERS ☞107—APPOINTMENT—POWERS.

Where a United States District Court, appointing three persons as receivers of a corporation, permitted a mortgagee of the corporation to bring suits to protect its rights, and the mortgagee brought suit in a state court, and two of the receivers filed an answer, admitting the more material averments of the bill, while the third receiver alleged that the mortgage was ultra vires and invalid as against creditors, the court would not restrain the third receiver from prosecuting in good faith an appeal from a decree of the state court adjudging the mortgage a valid lien, for one receiver need not yield his judgment to, or be governed in his actions by, coreceivers.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 157; Dec. Dig. ☞107.]

In Equity.  Suit by the Goodman Manufacturing Company against the Pittsburg-Buffalo Company, in which receivers of defendant were appointed.  On petition of the Union Trust Company of Pittsburgh for an order restraining a receiver from taking an appeal from a decree in equity of the court of common pleas of Allegheny county.  Denied.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for petitioner.

McIlvain & Murphy and S. S. Robertson, all of Pittsburgh, Pa., for receiver.

THOMSON, District Judge.  This is a petition of the Union Trust Company of Pittsburgh for an order restraining a receiver appointed by this court from taking an appeal from a decree in equity entered in the court of common pleas of Allegheny county, Pa.  The facts necessary for the determination of the question involved are as follows:

The Pittsburg-Buffalo Company executed to the Union Trust Company of Pittsburgh, the petitioner, two mortgages—a first mortgage to the trust company as trustee, dated August 25, 1909, to secure an issue of the first mortgage bonds, aggregating in principal amount $2,-500,000, and a second mortgage, dated April 29, 1910, to the said trust company, mortgagee, to secure a like indebtedness of $2,500,000.  The said Pittsburg-Buffalo Company having become financially embarrassed, F. R. Babcock, John W. Ailes, and John H. Jones were, at the above number and term, appointed by this court receivers of the property and assets of said company.  The mortgagor having made default in the aforesaid mortgages, afterwards, on August 1, 1914, the Union Trust Company, on petition, was granted leave by this court to commence and prosecute such suit or suits as it might be advised to be necessary for the purpose of protecting and enforcing its rights under the said second mortgage, dated April 29, 1910, and was authorized, if it deemed the same necessary for the protection of its right, to make the Pittsburg-Buffalo Company and the said receivers parties defendant.  Under the authority so granted and for the purposes aforesaid, the said Union Trust Company, mortgagee, filed a bill in equity in

the court of common pleas of Allegheny county, Pa., against the said Pittsburg-Buffalo Company, the aforesaid receivers of said company, the United States Sewer Pipe Company and the Pittsburgh Title & Trust Company, Trustee. To this bill an answer was filed by F. R. Babcock and John W. Ailes, two of the receivers, and a separate answer was filed by John H. Jones, the other receiver. The answer of Messrs. Babcock and Ailes admitted the more material averments of the bill, averring certain matters for further answer not important to specify here. The answer of the said John H. Jones, receiver, alleged, among other things, that the said mortgage in suit, dated April 29, 1910, was an ultra vires contract and invalid as against the creditors of the Pittsburg-Buffalo Company for certain reasons therein set forth. The cause went to trial on the issues raised; the court finding the said mortgage valid and a lien upon the properties covered thereby, and further finding that the principal debt of $1,750,000, secured by the mortgage, was owing, due, and payable. To the court's findings of fact and conclusions of law the said John H. Jones, as receiver, filed exceptions, all of which, save one, were, after hearing, dismissed by the court. None of the other parties defendant excepting to the action of the court, a final decree in harmony with the court's findings was entered on March 23, 1915.

The petitioner, having set forth in detail the foregoing facts, the issue raised by the bill and answers, and the court's findings of fact and conclusions of law, bases its prayer for a restraining order on the following averments: That substantially the only matter at issue in the foreclosure proceedings was as to whether the said second mortgage was an ultra vires contract; that the determination of this matter depended upon facts averred by petitioner in its bill of complaint, admitted by two of the receivers, not denied by the Pittsburg-Buffalo Company, and admitted by the said John H. Jones in his testimony, and with respect to which the court has made clear and convincing findings, to which the said Jones has filed exceptions so improper in form that they could not be the basis for valid specifications of error to the Supreme Court of Pennsylvania; that these exceptions have been dismissed by the court; that an appeal to the Supreme Court upon the errors assigned, if error could be properly assigned upon the exceptions taken, would virtually be matters of fact found by the court upon ample evidence and admitted by all parties, except the said John H. Jones; that the appeal which the said John H. Jones threatens to take from the said decree will not be taken in good faith and in the discharge of his duties as an officer of this court, but, as petitioner believes and charges, will be taken for the purpose of delay and of harassing petitioner in the collection of a debt which has been adjudicated to be due and payable in foreclosure proceedings authorized to be instituted by this court; that the questions involved therein are altogether frivolous and without merit, and will subserve the personal interests and purposes of the said John H. Jones, and would be contrary to the interest of the trust held by the court and in the administration of which the said Jones is an agent and officer of this court. The prayer of the petitioner is that this court make an order enjoin-

ing the said Jones, as receiver of the Pittsburg-Buffalo Company, from taking an appeal to the Supreme Court of Pennsylvania, from the decree of the court of common pleas entered as aforesaid, or from otherwise delaying or interfering with the sale of the properties of the said Pittsburg-Buffalo Company in accordance with the said decree.

The answer to said petition alleges that petitioner had submitted his cause to the courts of Pennsylvania for determination, with such right to appeal as is allowed by the laws of that state, and that no prayer was made to this court, nor any order made by it, that it should be restricted to an adjudication in the lower courts; nor was the right reserved to this court to review the adjudication of the court of common pleas. Respondent further averred that the said court of common pleas erred in its findings of fact and conclusions of law, and that because of such errors the decree was erroneous, and that respondent was advised by counsel learned in the law and verily believes that, upon consideration of the said decree by the Supreme Court of Pennsylvania, the decree will be reversed, and a decree entered dismissing the bill of complaint. He denies that any material delay will be caused by such appeal, and avers his willingness to co-operate with petitioner in having the cause advanced in the Supreme Court and heard at Philadelphia. He further avers that under his appointment by this court he is clothed with authority to administer the affairs of the estate intrusted to his care and to defend the rights of those in whose place he stands; that he is required as such officer to act according to his best judgment and good conscience, and is not permitted to surrender the rights of those for whom he acts because others may differ with him in opinion. The respondent asks that, in order that this important matter may receive full consideration by this court, he may be permitted to perfect his appeal to the Supreme Court of Pennsylvania, so as to operate as a supersedeas, as petitioner would have as ample remedy by injunction to restrain proceedings on the appeal as on the present application, while respondent would be remediless, unless he should incur the risk of a contempt of this court, and his cestuis que trustent would suffer irreparable injury, if an appeal should not be taken to the Supreme Court of Pennsylvania.

A question of procedure, and the power and duty of the court in the premises, is thus raised on petition and answer, which is important and fundamental. It is, of course, true that a receiver is an officer of the court. He derives his existence from an order which the court may vacate, or he may be held to his trust and compelled to exercise it properly. But his individuality is not lost, his conscience fettered, nor his judgment surrendered, when he accepts a receivership. On the other hand, he is presumably chosen because the court believes he will execute the trust reposed in him with wisdom, diligence, and fidelity; nor does it follow that he should necessarily yield his judgment to, or be governed in his actions by, his coreceivers, who may constitute a majority. The majority is not always right, and in the end he must answer for himself on all questions of fidelity in the execution of the trust. There appears to be nothing in the case which would justify the court in concluding that the receiver in question is acting in bad faith.

What, then, is the power and duty of the court under the facts as presented? The petitioner chose its own forum, and thus submitted its cause to the court of common pleas for final adjudication under the laws of the state. If Mr. Jones, one of the receivers, who was made a party defendant, believed that there was a valid legal defense to the action, it was not only his right, but his duty, to interpose it. The proceedings being adversary, he did not need the consent of the court for this purpose. The right to make defense inhered in his office. If this be true, at what point did his powers and duties in that regard cease? If he had a right to defend and urge upon the court the justice of his defense, he has also the right to call in question the judgment of the court, if he believes it to be wrong; in other words, the right to except and appeal. On what principle can the plaintiff claim a right superior to other litigants and insist that in this case the judgment of the lower court should be final, and that, because the one who interposes what the plaintiff regards as an adequate defense happens to be an officer of this court, we should pass upon the case and prevent further defense? I think such an exercise of power by this court, if such power exists at all, would be extremely arbitrary and seriously interfere with the orderly administration of the law.

In Felton v. Ackerman, 61 Fed. 225, 9 C. C. A. 457, the right of a receiver to appeal from the judgment of the court appointing was recognized. Judge Taft in discussing this right, said:

"While it is true that the receiver is an arm of the court in the administration of the property, yet where persons intervene to obtain relief against him, because they cannot obtain full relief in any other forum, the issue raised by his answer to the petition makes the proceeding an adversary one, in which the receiver represents the interests of the owners of the property of which he is temporarily in charge. If, as such representative, he feels aggrieved by an order of the court made in an adversary proceeding of this character, it is difficult to see why he should not be permitted to have the order of the court reviewed by the appellate tribunal to which any other litigant may resort. Certainly, the owners of the property, if aggrieved by the order against the receiver, might appeal, and there would seem to be no justice in preventing the temporary custodian of their property from doing so. * * * But where the appeal is in the interest of the property, and therefore is in the interest of all who shall thereafter be shown to have any right to the property, it is quite convenient and proper that the receiver should be allowed to conduct the appellate proceeding. * * * He is the receiver of the federal court; and, while it is true that this is an adversary proceeding, as already stated, he does not lose his character as an officer of the court, with all the consequences as to directness of remedy against him which this relation makes necessary. Section 2 of the act of August 13, 1888, defining the jurisdiction of the Circuit Courts of the United States, provides that whenever, in any cause pending in any court of the United States, there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner, that the owner or possessor thereof would be bound to do, if in possession thereof."

If a receiver may question by an appeal the legality of a judgment rendered by the court which appointed him, and to which alone he is legally answerable, how much more certainly would he have the right to appeal from the judgment of a court to which he is in no way answerable? As a general proposition, the courts have no power to grant

injunctions to stay proceedings in a state court. Section 720 of the Revised Statutes of the United States provides:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

See Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345.

In Wilson v. Lambert, 168 U. S. 611, 18 Sup. Ct. 217, 42 L. Ed. 599, the court said:

"There can be no reason or propriety in appealing to a court of equity to restrain proceedings that are being conducted in other courts, competent to construe the statutes under which they act, and to decide every question that may arise in the course of the proceeding. To allow litigations to be thus diverted tends to the multiplication of litigation, and the production of unnecessary delay and expense—to say nothing of the unnecessary vexation to parties."

As we would not undertake to enjoin the action of the common pleas court, we ought not to enjoin the parties before that court, and thus seek to do by indirection what we could not do directly. It was said in Riggs v. Johnson County, 6 Wall. 166, 18 L. Ed. 768:

"It is a doctrine of law, too long established to require a citation of authorities, that where a court has jurisdiction it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that, where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. * * * The fact, therefore, that an injunction issues only to the parties before the court, and not to the court, is no evasion of the difficulties that are the necessary result of an attempt to exercise that power over a party who is a litigant in another and independent forum."

The plaintiff having chosen its forum in which to prosecute its action, that court having full and complete jurisdiction of the case, and defense having been made therein, presumably in good faith, I can see no reason why this court should interfere with the orderly course of procedure in that tribunal. Without passing on the justice of the plaintiff's case, it is sufficient to say that, if the defense interposed is without merit, in due course the plaintiff will obtain a final decree in its favor. The prayer of the petition must therefore be denied.